UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 5:06CR54-BR |
| | ) | |
| JEREMY DAGAN JAYNES | ) | |
| | | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 5:07CR3-BR |
| | ) | |
| HOWELL WAY WOLTZ | ) | |

O R D E R

**THIS MATTER** is before the Court on the government's motion for a preliminary order of forfeiture of 160 units of Cimtec Automation, LLC ("Cimtec") held in the name of Sterling ACS, Ltd. ("Sterling ACS") in each of the above-captioned cases. (Case No. 5:06CR54-BR, Doc. No. 66; Case No. 5:07CR3-BR, Doc. No. 19.) Defendant Jeremy Jaynes has not filed any response to the motion. Defendant Howell Woltz ("Woltz") filed a response in opposition to the motion, (Case No. 5:07CR3-BR, Doc. No. 20), and subsequently an affidavit, (Case No. 3:06CR74-BR, Doc. No. 325).[1] The government filed a reply brief, (Case No. 5:07CR3-BR, Doc. No. 22), to which Woltz filed an "answer," (id., Doc. No. 23.)

By way of pertinent background, Sterling ACS "was a Bahamian corporation in the business of incorporating off-shore entities and providing related financial services." (Case No. 3:06CR74-BR, Doc. No. 165, at 12.) Woltz and his wife, Vernice, were officers, directors, and owners of Sterling ACS. (Id.; Case No. 5:07CR3-BR, Doc. No. 19-4.) In November 2003,

---

[1]Some relevant documents are filed in Woltz's other criminal case, No. 3:06CR74-BR. That case and his instant case, No. 5:07CR3-BR, were consolidated for plea and sentencing. However, the government seeks an order of forfeiture only in the latter case.

Woltz through Sterling ACS caused the incorporation of a number of Anguillan companies controlled by Jaynes and a co-conspirator. (Case No. 3:06CR74-BR, Doc. No. 165, at 13-14, 17; Case No. 5:06CR54-BR, Doc. No. 18, at 13-14.) These companies' off-shore bank accounts were used to launder approximately $20 million in proceeds of Jaynes' fraudulent stock promotion activities, more than $7 million of which Woltz acknowledges that he knowingly laundered or caused to be laundered. (Case No. 3:06CR74-BR, Doc. No. 165, at 20; Case No. 5:06CR54-BR, Doc. No. 18, at 14; Case No. 5:07CR3, Doc. No. 19-5, at 1.)

In 2007, Jaynes pled guilty, pursuant to a plea agreement, to securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff. Pursuant to Jaynes' guilty plea and by way of a Consent Order and Judgment of Forfeiture, in 2008, the court ordered that Jaynes forfeit to the government shares of stock, ownership interests in certain companies, money, and other assets. (Case No. 5:06CR54-BR, Doc. No. 18, at 9-10; id., Doc. No. 38.) That forfeiture order was incorporated in Jaynes' judgment. (Id., Doc. No. 39, at 5.)

In 2007 and pursuant to a plea agreement, Woltz pled guilty to conspiracy to defraud the government by impeding the functions of the Internal Revenue Service in the assessment and collection of taxes in violation of 18 U.S.C. § 371 (Case No. 3:06CR74-BR) and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (Case No. 5:07CR3-BR). Under the terms of his plea agreement, Woltz agreed to forfeit certain property, including money, his equity interests in three companies, including Sterling ACS, and "[a]ny additional property which is traceable, directly or indirectly, to proceeds of specified unlawful activity or otherwise involved in specified unlawful activity . . . ." (Case No. 3:06CR74-BR, Doc. No. 165, at 9-10, 22.) Forfeiture of these assets was ordered as a part of Woltz's sentence. (Case No. 5:07CR3-

2

BR, Doc. No. 16, at 5.)

According to the government, subsequent to the entry of the judgments in Jaynes' and Woltz's criminal cases, the government learned of Sterling ACS's ownership of the Cimtec units upon being "contacted by an officer of Cimtec and an attorney representing Cimtec, who were seeking to buy out the Cimtec interest held by Sterling ACS." (Case No. 5:07CR3-BR, Doc. No. 19, at 9.) The government seeks preliminary forfeiture of this property pursuant to Federal Rule of Criminal Procedure 32.2(e)(1). That Rule permits the court to "at any time enter an order of forfeiture or amend an existing order of forfeiture to include property that: (A) is subject to forfeiture under an existing order of forfeiture but was located and identified after that order was entered; or (B) is substitute property that qualifies for forfeiture under an applicable statute." Fed. R. Crim. P. 32.2(e)(1). Because Jaynes has not filed a response, the court presumes that he has no objection to the forfeiture of the Cimtec units, and the government's motion will be allowed in his case. As noted previously, Woltz contests the forfeiture of that property, and therefore, the court proceeds to consider whether it is appropriate in his case.

The forfeiture of Woltz's various assets in his criminal judgment was proper pursuant to 18 U.S.C. § 982(a)(1), which requires the court in imposing a sentence for violation of 18 U.S.C. § 1956, the money laundering statute, to order the defendant to forfeit "any property, real or personal, involved in such offenses, or any property traceable to such property." That criminal forfeiture statute in turn incorporates the provisions of 21 U.S.C. § 853. 18 U.S.C. § 982(b)(1). Section 853's provision on the forfeiture of substitute property reads in pertinent part:

> (1) In general
> Paragraph (2) of this subsection shall apply, if any property described in subsection (a) of this section, as a result of any act or omission of the defendant—

3

> (A) cannot be located upon the exercise of due diligence;
> (B) has been transferred or sold to, or deposited with, a third party;
> (C) has been placed beyond the jurisdiction of the court;
> (D) has been substantially diminished in value; or
> (E) has been commingled with other property which cannot be divided without difficulty.
>
> (2) Substitute property
> In any case described in any of subparagraphs (A) through (E) of paragraph (1), the court shall order the forfeiture of any other property of the defendant, up to the value of any property described in subparagraphs (A) through (E) of paragraph (1), as applicable.

21 U.S.C. § 853(p).

In support of its motion, the government submits the affidavit of Special Agent Josh Etheredge. (Case No. 5:07CR3-BR, Doc. No. 19-5.) The agent declares that "[i]nvestigation determined that more than $20 million in criminal proceeds was obtained and laundered in connection with" the crimes of Jaynes and Woltz. (Id. at 1; see also Case No. 3:06CR74-BR, Doc. No. 165, at 20 (Woltz's stipulation that "[f]rom on or about September 23, 2004, through in or about March 2005, approximately $20 million was transferred to off-shore bank accounts controlled by Anguillan entities my wife and I created for [Jaynes] . . . through Sterling ACS . . . . I hereby acknowledge that I knowingly laundered or caused to be laundered more than $7 million worth of these funds").) He further states that he

> and other law enforcement agents searched diligently for assets owned or controlled by Jaynes, Howell Woltz, Vernice Woltz, and others, including the proceeds of their criminal activity. Except for funds and assets already forfeited in these cases, consisting primarily of $1.6 million voluntarily surrendered by Jaynes, agents have not been able to locate and recover most of the estimated $20 million in criminal proceeds obtained by these co-conspirators. A substantial portion of the estimated proceeds has been transferred to third parties and/or placed beyond the jurisdiction of the court by transfers outside the United States.

4

(Case No. 5:07CR3-BR, Doc. No. 19-5, at 2.)  Based on this uncontroverted testimony, the court finds that the government has satisfied the requirements of § 853(p)(1).

Woltz does not argue otherwise.  Rather, he contends that the Cimtec units are not subject to forfeiture because neither he, Sterling ACS nor Jaynes holds a beneficial interest in the units.[2]  (Case No. 3:06CR74-BR, Doc. No. 325; Case No. 5:07CR3-BR, Doc. Nos. 20, at 2-3; 23 at 1-3.)  Woltz claims that Sterling ACS was acting as "*trustee de son tort*" for the company Robertson & Foley, Inc. in regards to the purchase of the Cimtec "shares."  (Case No. 5:07CR3-BR, Doc. Nos. 20, at 2; 23 at 1.)  Thus, his objection rests on the ground that a third party owns the Cimtec units.

While there is authority for the proposition that a defendant lacks standing to challenge forfeiture on the ground that he does not own the substitute property, see, e.g., United States v. Stark, No. 03-CR-30190-MJR, 2011 WL 544057, at *1-2 (S.D. Ill. Nov. 9, 2011) (denying the defendant's motion to vacate the order of forfeiture of substitute property because the defendant did not have standing based on his disavowal of ownership interest in the substitute property and "due to his status as the defendant subject to the forfeiture judgment"); United States v. Tremblay, No. S1 05 CR.783 JFK, 2008 WL 4571548, at *1-2 (S.D.N.Y. Oct. 10, 2008) (holding that the defendant lacks standing to challenge an order forfeiting as substitute property funds in his company's Bahamian bank accounts on the ground that those funds belong to the company's clients); United States v. Weidner, No. 02-40140-01-JAR, 2004 WL 432251, at * 5 (D. Kan.

---

[2]He also disputes forfeiture on the grounds that venue is improper and the undersigned has been disqualified from the proceedings. (Case No. 5:07CR3-BR, Doc. No. 20, at 1-2.)  The court has previously rejected the disqualification issue, (see Case No. 3:06CR74-BR, Doc. No. 327), and the venue issue has long ago been waived, see United States v. Calderon, 243 F.3d 587, 590-91 (2d Cir. 2001) (holding that venue in a criminal case is waived by a valid guilty plea).

5

Mar. 4, 2004) (granting the government's motion to substitute property over the defendant's objection and recognizing that the defendant lacks standing and "cannot contest forfeiture on the grounds that the subject property is owned by a third party"), the court concludes that, at any rate, the government has made a sufficient showing that Woltz vis-a-vis his ownership of Sterling ACS has an interest in the 160 Cimtec units.[3] Pursuant to a subscription agreement dated 9 January 2002, Sterling ACS, by and through Woltz as its Director, purchased membership interests of Garrett Morgan II, LLC (now known as Cimtec), representing 16% or 160 units, for $100,000. (Case No. 5:07CR3-BR, Doc. Nos. 19-1, 19-2, 22-1.) Under the terms of the subscription agreement, Sterling ACS represents that it "is purchasing the Interests solely for [its] own account for investment and not for resale and distribution." (Id., Doc. No. 22-1, ¶ 4A.) Furthermore, the agreement prohibits transfer of the interests unless the transfer is authorized by the company's operating agreement and there is an effective registration statement under applicable securities law. (Id. ¶ 4D.)

According to the affidavit of Cimtec's Manager:

> At no time either before or after the agreement was executed by Sterling ACS in 2002 has Cimtec ever issued certificates evidencing ownership in the company. Ownership interests are evidenced only by Cimtec's records. Moreover, Cimtec's operating agreement has never provided for the transfer of ownership interests. Since Sterling ACS acquired its interest, that interest has been shown in Cimtec's records as an interest held solely by Sterling ACS and not by Robertson & Foley, Inc., or any other individual or entity. At no time has Sterling ACS notified Cimtec that Sterling ACS has transferred or attempted to transfer its interest in Cimtec, nor has any transfer of the interest of

---

[3] The court presumes the preponderance of the evidence standard applies. See United States v. Poulin, 690 F. Supp. 2d 415, 421-22 (E.D. Va. 2010) ("As is the case under § 982, the government must prove its entitlement to forfeiture of substitute property by a preponderance of the evidence." (citing United States v. Tanner, 61 F.3d 231, 234 (4th Cir. 1995)).

> Sterling ACS ever been noted in Cimtec's records, nor has anyone ever notified Cimtec that the Sterling ACS interest was actually held in trust for Robertson & Foley, Inc.

(Id., Doc. No. 22-1.)

This testimony and the documentary evidence establish that the 160 Cimtec units are properly forfeitable as Woltz's substitute property under § 853(p). Of course, to the extent that Robertson & Foley, Inc. may have an interest in the Cimtec units, it is free to assert its interest in an ancillary proceeding under § 853(n).

The government's motion for a preliminary order of forfeiture is ALLOWED. The government is DIRECTED to submit a proposed preliminary order of forfeiture within 5 days of the date this order is filed.

This 5 August 2013.

                                                                W. Earl Britt
                                                                Senior U.S. District Judge